THE ERIE ELEVATOR COMPANY, THE LONG DOCK COMPANY
and THE ERIE RAILROAD COMPANY

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY and A. HARRY
MOORE, collector of taxes.

[Submitted October 24th, 1913. Decided October 25th, 1913.]

1. Owners alleging in their bill for injunction that the taxes sought to be collected had been paid in full in cash were entitled to relief in a court of equity.

2. On judicial confirmation of a commissioners' report made in 1903, under the Martin act, adjusting disputed personal property taxes for a series of years, the city received the entire amount of the award in cash, receipted its collector's bill, and discharged the taxes on its books. In 1911 the tax collector being advised that the award and adjustment were void, changed the entry in the tax books so as to credit the taxpayer with the amount received under the award, and sought to enforce collection of the balance due on the assessments involved in the award.—*Held*, that collection would be restrained, unless the city first repaid to the tax debtor the amount paid by it in discharge of the award.

3. Under the statute imposing upon the circuit court the duty of confirming tax adjustments, the court had the right to set aside a report which it had formerly confirmed, and refer it back to the commissioners and to confirm the report subsequently made.

4. On a bill for injunction against the collection of taxes claimed to have been paid under an award of commissioners under the Martin act, the legality of the award and the confirmation thereof cannot be questioned by the defendant, there being no suggestion of fraud, but rather a contention that the action of the court in vacating a prior order of confirmation was erroneous.

5. If the confirmation of such prior report was vacated by the *bona fide* consent of all the parties interested, the final order of confirmation was immune from collateral attack in the injunction suit, though the court, without such consent, would have been without jurisdiction to make the order of vacation, and its action *sua sponte* would have been open to collateral attack.

6. A city may be bound by the honest action of its officers conducting a litigation for the city and affecting the procedure therein, though the action of the officers may have resulted to the disadvantage of the city.

7. The circuit court's confirmation of a commissioners' report in a tax adjustment proceeding, although judicial in character, need not be put in the form of an order or entered in the minutes, as is required in proceedings generally by supreme court rule 40, but may be endorsed upon the report which may then be filed in a public office as notice of confirmation, and, where the duty, if any, rested upon a city through its counsel to have the rule entered in the minutes, it could not, after having accepted the award of the report, object that it was not entered, especially in view of the uniform practice of filing confirmation orders, but not entering them in the minutes.

*Mr. William H. Carey* and *Mr. James B. Vredenburgh,* for the Erie Elevator Company.

*Mr. Gilbert Collins,* for the Long Dock Company and the Erie Railroad Company.

*Mr. Warren Dixon,* for the defendants.

STEVENSON, V. C.

This memorandum will merely state the main propositions from which the conclusion is reached that the complainants are entitled to the injunctive relief prayed for in their bill.

1. In July, 1911, a few days before the filing of the bill, the collector of taxes of Jersey City advertised the property of the complainants, the exact location of the title to which need not be considered, for sale for the collection of taxes from 1889 to 1902, inclusive, aggregating $295,056.03. The complainants allege in their bill that these taxes have been paid in full in cash. If such be the case the complainants are entitled to relief in a court of equity. The jurisdiction of the court in this case, in my judgment, is beyond all doubt, but if I had a doubt the point was directly decided by Chancellor (then Vice-Chancellor) Walker in a brief opinion granting the preliminary injunction. The answers present the issue of payment or non-payment of the taxes set forth in the bill, and that issue has been tried to a finish with proceedings which have occupied several days.

All the taxes against this property from 1884 to 1892 were adjusted by the Martin act commissioners of Jersey City, by a report filed in the office of the clerk of the circuit court of Hud-

son county on August 12th, 1903, which report was duly advertised and subsequently confirmed and then filed in the office of the city collector. The collector presented to the defendants a bill under date of September 25th, 1903, setting forth in detail the taxes for each year from 1884 to 1902, as adjusted by the Martin act commissioners, aggregating the sum of $261,603.34, which amount was promptly paid on behalf of the defendants in cash, and thereupon the bill was receipted by the collector and the taxes were discharged on the books of the city.

In 1911, eight years later, the collector of Jersey City, one of the defendants, appears to have been advised that the adjustment of taxes above mentioned was null and void; that the original lien for taxes remained undischarged; that the payment of the $261,603.34 could properly be credited only on account of the total amount of taxes due, and apparently the payment was accordingly credited in such way as to discharge the taxes for a number of years in the series. There is not the slightest suggestion of mistake, willful illegality or fraud in the transaction which culminated in the payment on behalf of the defendants in good faith in October, 1903, of the total amount of the taxes in question as adjusted and accepted by all parties concerned. The Martin act commissioners were men of the highest character, the late Mr. E. F. C. Young being the chairman. The adjustment in fact ratified an honest agreement between the mayor, the city council and the finance committee of Jersey City on the one hand, and these defendants on the other, by which many intricate and perplexing questions in relation to these taxes, leading inevitably to expensive litigations in the state and federal courts, were finally settled. It has not been claimed that the Martin act commissioners abnegated their functions—that these gentlemen did not faithfully discharge the duties resting upon them as city officials, when they made this adjustment or award. The fact that before the award was made the parties interested had agreed, after elaborate negotiations, that they would accept such an award, under the circumstances, is a further indication that the award which came from the minds and judgment of the commissioners was equitable and just. These men did not violate their official duty by merely accepting a compromise which the

city officials and the taxpayers saw fit to make. To characterize the arrangement which was made between the city officials and these complainants before report 110 was made, or the proceedings instituted, which resulted in that report, as an agreement, is in some degree misleading. There was no agreement binding upon any party. As indicated by the resolution of the finance committee, the city authorities and the taxpayers merely signified that in their opinion a certain settlement of their disputes and impending litigations would be just and fair, and they merely submitted that opinion to the judgment of the tribunal whose duty it was to finally decide the case.

Not a reason has been suggested during the argument of this cause why the action of these tax commissioners, sanctioned by the Hudson county circuit court, and accepted without dispute by the public and by the parties immediately interested, should now, after this long period of years, be disregarded, which may not be justly deemed a pure technicality. If this same sort of a settlement, partly out of court and partly in court, should be effected between two contending private parties disposing of a large amount of property, involved in complex and expensive litigation, I doubt if counsel could be found in the state to stand before a court and argue that the settlement so reached could lawfully be disregarded or set aside. It would seem to be deplorable if in this particular case the limitations under which municipal business must be done, involving of course the recognition oftentimes of safe and necessary technicalities, a different result must be reached from that which would be recognized instantly as inevitable in case the matters in dispute lay between two well-trained business men of large affairs, each desirous of securing his own and each desiring no more.

2. Before briefly discussing the objections to the tax adjustment of September, 1903, with which we have to deal, it is worth while perhaps to pause long enough to emphasize the advantage which both parties, and especially Jersey City, derived from that adjustment. It would take too long to enumerate the elements of doubt, dispute and litigation which entered into the situation of the taxes upon this property as it existed when this honest advantageous settlement was made in September, 1903. The

various parties interested as owners or lessees of the property had different disputes and claims pending between themselves, respectively, and Jersey City, and these taxpayers had disputes and claims pending *inter sese*. The supreme court of the state had been appealed to; legislation had been passed applicable to a part of the situation; the property had been assessed as personalty for a number of years and a large apparent tax lien so created, when, for all that appears in this case, the fact was indisputable that the property should have been assessed as realty.

As to the amount which the commissioners and the court found to be a just settlement of all these taxes, no discussion is necessary. The justness of the award or settlement has not been and could not be impugned. It may be worth while to note in passing, however, that the city received by this adjustment every dollar of principal due for the taxes as assessed during all these years, and enough in addition by way of interest to cover any pecuniary loss sustained by the city on account of delay in the payment of the money.

3. It is my purpose in this memorandum to dispose quite briefly of the legal objections to the adjustment of taxes in question, the recognition of which the defendants claim will render the whole adjustment void and leave the parties standing in the midst of their doubts and perplexities, and with the menace before them of almost interminable and expensive litigation, while the city years ago received and expended the $261,603.34 which the taxpayers, in good faith, paid in settlement of the city's entire claim.

It appears that during the earlier years covered by report 110, the immense building which made the complainants' property subject to such heavy taxation, was assessed as personal property, the land not being included in any municipal assessment. The legality, and after two years the enforceability of such an assessment, may certainly be regarded as extremely doubtful. And yet it seems that the defendant, the collector, in 1911, in effect, opened the entries on the city's books, credited the $261,- 603.34 (which the complainants had paid, and the city officials had accepted, in satisfaction of the entire amount of unpaid taxes, in accordance with the adjustment made by report 110)

upon the early yearly taxes which were assessed as upon personal property. Equity would seem to require the repayment by the city of this money and the reinstatement of the complainants' objection to their liability to these personal taxes before the city can object to the validity of report 110 under which this money was received. Otherwise, we have this situation: The debtor has a defence to the first items of the account against him aggregating a large sum of money; all the items are adjusted and make the subject of an award which both parties accept, and the amount awarded in gross is paid in satisfaction of all items; the creditor, after a period of years, arbitrarily elects to apply the amount paid in satisfaction of the award to the discharge of the first, the disputed items, retains the money paid, and then declares that the award was illegal and void.

4. It is objected that the adjustment of the taxes, which were the subject-matter of report 110, was void because all of the same taxes, excepting for the years 1899 to 1902, inclusive, had been adjusted by the same commissioners in a prior report, No. 104, which in the year 1898 had been duly confirmed by the Hudson circuit court. It appears that when the solution of all the disputes between the parties was reached in 1903, the defendant, the mayor and aldermen of Jersey City, through the city counsel, went into the circuit court and took an order vacating the confirmation of report 104, and referring the same back to the commissioners then in office, who thereupon made the adjustment embodied in their report 110, the status of which is now called in question. It may be noted that a portion of the tax lien as adjusted by report 104 could not honestly or equitably have been collected for reasons which I shall not detail. The legal point taken against the validity of report 110 is that the circuit court had no power to vacate its order confirming report 104. In my judgment, this legal objection is not well taken.

When the statute imposed upon the circuit courts the duty of confirming these tax adjustments, precisely as in the case where another statute imposed upon the circuit court of the state, the duty of ratifying assessments for improvements, it was a judicial duty which was placed upon these tribunals to be performed in a judicial manner, according to the rules and methods of procedure

which characterize all judicial proceedings. It is suggested that the statute made the circuit court a sort of commissioner or city official, whose duty it was once and for all to pass upon these reports adjusting taxes, and who would in each case upon taking this official action become in respect thereto *functus officio.* The statute, in my opinion, will not bear this construction. The intention of the law, it seems to me, is clear, viz., to bring into the business of these important tax adjustments the judicial function not of a commissioner but of a court. It may be that the legislature might have imposed upon the individual for the time being holding the office of circuit judge, this duty, whether it may be classified as judicial or administrative, with reference to the adjustment of taxes under the Martin act, but the legislature has not done this thing, but, on the contrary, has called in a court.

Counsel for the defendants relies for the support of his contention upon the case of *Rutherford* v. *Meginnis, 72 N. J. Law 444.* That case dealt with a statute which was substantially the same as the one with which we have to deal in this case. The facts of the case, however, were radically different, and did not involve or suggest the consideration of the question of the power of the circuit court in the orderly course of its procedure, to deal with its confirmatory order precisely as it deals with all other orders, and to reconsider and vacate its confirmatory action, and send an adjustment back to commissioners for further consideration and report. In the *Meginnis Case* the Bergen circuit court undertook, when a Martin act report was presented to it, to amend the same in an important particular. The duty of the court was plain. It could either confirm the report or refuse confirmation and send the report back to the commissioners for further action. After the Bergen circuit court had once exercised this novel jurisdiction by which it took the place of the commissioners and undertook to discharge their duty, it heard a further application to make a further amendment and made an order purporting to make such amendment, and these two amendatory orders were the matter in dispute in the *Meginnis Case.* Nothing said by Mr. Justice Swayze has any bearing upon the question whether the statute intended that

the circuit court after once confirming a report should have no power whatever over its order in the way of reconsideration and vacation, when the deliverances of that learned judge are read in the light of the case which was before him. As that great jurist, old Lord Halsbury, has said, in effect, several times I think, a decided case is a controlling precedent only when the same facts are presented again to the court. I cannot, however, find even a *dictum* in the opinion of the court in the case of *Rutherford* v. *Meginnis*, which, when read as it ought to be read in connection with the case before the court, can possibly be stretched so as to make it support the doctrine for which counsel for the defendants contends.

In the absence of any decision denying the power of the circuit court now called in question, we have a series of precedents in the Hudson circuit court made by the action of a long line of learned judges, in vacating and sending back these tax adjustment reports. Such orders have been made without question by Justices Dixon, Knapp, Lippincott, Collins and Parker. I am informed that the title to millions of dollars of property rests upon the legality of the action of these eminent judges. Mr. Justice Dixon, himself, sat in the *Meginnis Case* and concurred in the judgment of the court which it is now claimed convicted him of gross and dangerous error in the discharge of his office as judge of the circuit court of Hudson county.

5. Even if the action of the circuit court in vacating the confirmation of report 104, would have been or would now be adjudged invalid, if directly attacked, I think the argument of counsel for the complainants is sound, that in this present case the defendants' attack upon that judicial action is indirect and is therefore futile. The exact point is not whether the legality of the order of the circuit court vacating the order confirming report 104, may now be inquired into in this controversy, but whether the legality of report 110, and of the order of the court confirming that report, can now be inquired into. The Martin act commissioners and the circuit court under this statute had jurisdiction of the matter of these unpaid taxes. They undertook to exercise that jurisdiction. No fraud in the transaction is suggested. The whole fabric of the defendants' argument

rests upon the proposition that the action of the court was erroneous. Even though it be conceded that the judicial action in question related to the jurisdiction of the court, in my opinion, the doctrine still remains applicable, that in this sort of a case a collateral attack cannot be allowed. If such view is erroneous, the result in Jersey City might be deemed appalling.

6. It is worth while, I think, to point out that the honest advantageous settlement which the city of Jersey City and these taxpayers reached by their agreement, did not, as has been argued by counsel for the defendants, surrender any part of the claim of the city. The parties did not meet with paper liens for taxes amounting to over $300,000 before them, and agree that the whole claim should be absolutely and finally compromised and adjusted at a smaller sum. They merely consented to a course of legal procedure. After the confirmation of report 104 had been vacated, and the commissioners had taken up *de novo* the adjustment of these taxes, they were under no legal or even moral obligation to ratify the agreement which the parties had reached. Of course, these men who were concerned in this transaction, and who appear before this court to have acted carefully and conscientiously for the promotion of the best interests of Jersey City, felt reasonably sure that the distinguished financier, now deceased, and his associate, who constituted this commission, would take the same view in regard to what was just, that they had taken, and also felt reasonably sure that such action would be confirmed by Judge Parker, now Mr. Justice Parker, who held the Hudson circuit court. The agreement, however, was made subject to the chance that it might or might not be carried out by the sworn officers of the city and of the state, who had the business in charge, according as these officers might view the adjustment which was agreed upon.

7. Even if the action of the court in vacating its confirmation of report 104 would have been deemed illegal, there is, I think, an additional reason which protects it from collateral attack in this case, founded upon the *bona fide* consent of all the parties interested, that such action be taken and their subsequent ratification of such action.

It is important to perceive that what the parties consented to was, as I have said, a mere matter of procedure. A court may have no power legally to open a judgment. Neither party to the judgment alone may be able lawfully to procure the opening of the judgment. But if both parties consent that the judgment shall be opened or shall be deemed opened, and that the cause shall be retried, the judgment which is rendered in the same cause by the court does not rest upon the consent of the parties, although without that consent the procedure could not have been had which resulted in the judgment. If the judgment debtor in such case pays over the amount of the judgment to the judgment creditor, is it possible that the latter can subsequently object to anything in the mere procedure which resulted in the judgment to which procedure he gave his unqualified consent? It is true that Jersey City consented to this course of procedure through all these officers, but the proceeding was in court, and it certainly is not the law that a municipality is never bound by the honest action of its officers who are conducting a litigation in consenting to matters pertaining to the procedure of the court in which the litigation is pending. Would Jersey City be allowed in a court to object to a judgment honestly rendered because her official representative in court, the city counsel, had, in the honest exercise of his office, consented to the postponement of the case to the disadvantage, as may have been made subsequently apparent, of his client?

8. That the Hudson circuit court confirmed report 110 in September, 1903, as is recited in the official bill for these taxes rendered by the collector in October, 1903, to which I have already referred, is amply proved in this case, and I think is not disputed. The order of confirmation, however, has been lost. It is objected that the order not having been entered in the minutes of the court, became "of no effect" under the provisions of rule No. 40 of the supreme court, alleged to be applicable to the practice of the Hudson circuit court. I shall deal briefly with this objection, which I think illustrates the character of the attack made in this case upon report 110.

(1) There are strong grounds for holding that the rule, if applicable at all to the circuit court practice, is not applicable to

the action of the court in confirming these Martin act reports. I think the argument of the counsel for complainants is sound, that the confirmatory action of the circuit court, although judicial in character, is not necessarily to be put in the form of an order or recorded in the minutes. It may properly be endorsed upon the report, which then may be filed in a public office, where all property owners concerned can readily ascertain that the necessary judicial sanction has been given to the adjustment made by the report. There can be, I think, no objection to having the judicial approval of the circuit court manifested by an order filed and entered in the minutes. Perhaps the most satisfactory way of evidencing this judicial action would be by both an endorsement upon the report filed in the collector's office and an order signed and entered in the minutes.

(2) The order confirming report 110 was applied for by Jersey City through its city counsel, and it became his duty, if the duty rested upon anyone, to have the rule entered in the minutes. It seems that he neglected to have this thing done. The validity of this entire judicial action, as we have seen, was recognized by the city authorities; a bill for the amount of the adjusted tax liens was presented by the city collector, and the amount thereof ($261,603.34) was thereupon paid by the taxpayers, these complainants in good faith, and the bill was receipted. And now it seems the city of Jersey City is made to stand with this money in its treasury and claim that the whole adjustment in pursuance of which the money was paid, was void because its own official, the city counsel, neglected to comply with this alleged rule of the Hudson circuit court, in respect of entering the order in the minutes of the court.

(3) It has been abundantly proved that of the orders confirmatory of tax adjustment reports amounting to over one hundred, which have been made by the Hudson circuit court, none has been entered in the minutes. The uniform practice, during the long period in which such practice has been evolved, has been to file the orders but not to enter them in the minutes.

Here, again, it may be noted that if the contention of counsel for the defendants is sustained, large numbers of tax titles in Jersey City, involving hundreds of thousands, if not millions,

of dollars worth of property, would ·be subjected to at least a cloud of illegality which might involve large pecuniary loss.

9. The foregoing memorandum, although hastily dictated, is based upon a most elaborate and satisfactory argument, occupying the whole of yesterday, by which I have been greatly aided in the consideration of this case. I doubt if anything which could be pertinently urged on either side of the questions in issue, or could be suggested to the mind of the court under the stimulus of effective advocacy, was overlooked. I may have been led into error, but I do not believe that any further consideration of this case, or the work of preparing an elaborate opinion, would correct such error. In case of an appeal, which I understand may be taken, I will ask counsel to give me notice, and thereupon this memorandum, in its present form, or with some revision, will be filed.